UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SINAA KHAMIS,<br><br>        Plaintiff,<br><br>   v.<br><br>CHRISTINE E. WORMUTH, et al.,<br><br>        Defendants. | Case No. 24-cv-02565-VKD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 25 |

Plaintiff Sinaa Khamis brings this action against defendants Christine E. Wormuth in her official capacity[1] as Secretary of the Army, the Department of the Army, and Does 1-25. Dkt. No. 1. Pursuant to the parties' stipulation, Ms. Khamis filed a first and then a second amended complaint, the operative complaint. Dkt. No. 18. The second amended complaint asserts claims of sexual harassment, retaliation, and discrimination on the basis of sex, religion, and national origin in violation of Title VII of the Civil Rights Act of 1964. *Id.* ¶¶ 87-159. Defendants move to dismiss, without prejudice, the second amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim and for a more definite statement of the pleading under Rule 12(e). Dkt. No. 25 at 2. Ms. Khamis opposes this motion but also seeks leave to further amend her complaint. Dkt. No. 30. The Court finds this matter suitable for decision without oral argument. *See* Civil L.R. 7-1(b).

Upon consideration of the moving and responding papers, the Court grants in part and

---

[1] Ms. Khamis does not specify whether Ms. Wormuth is being sued in her personal or official capacity. Given the context of the claims at issue, the Court assumes that Ms. Khamis sues Ms. Wormuth as an agent of her employer, the Department of the Army.

denies in part defendants' motion to dismiss the second amended complaint with leave to amend.[2] The Court grants defendants' motion for a more definite statement as unopposed.

**I.    BACKGROUND**

According to the operative complaint, Ms. Khamis began work as a civilian instructor of Arabic languages at the Defense Language Institute Foreign Language Center (DLI) in 2008. Dkt. No. 18 ¶ 1. The DLI is located at the Presidio of Monterey in California and provides full-time courses in multiple languages for members of the Armed Forces and additional select government agents. *Id.* ¶¶ 6-7. Each school within the language program is headed by a civilian dean and an associate dean who is a senior military officer. *Id.* ¶ 9. The schools are divided into different departments, each of which is chaired by a civilian. *Id.* ¶ 10. Beginning in July 2021, Ms. Khamis worked at the Middle East School II in Department C. *Id.* ¶¶ 3, 25.

Ms. Khamis alleges that "she is from Baghdad, and was raised in the Sunni faith." *Id.* ¶ 21. She alleges that she "does not wear a headscarf or hijab, and generally does not adhere to fundamentalist or conservative Islamic views on women's dress." *Id.* ¶ 22. She states that during her 14 years of employment with the DLI, she "was an exemplary employee and teacher, earning many accolades." *Id.* ¶ 23. However, upon beginning work in Department C in July 2021, she began suffering harassment "[n]early immediately." *Id.* ¶ 26. Her harasser, identified in the complaint as Assistant Professor A[3] ("Asst. Prof. A"), "considers himself to be a Muslim with conservative leanings with regard to the appropriate dress and behavior of Arabic women

---

[2] All named parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 6, 27. The complaint also refers to 25 "Doe" defendants. Dkt. No. 18 at 1. These defendants are not considered for the purposes of determining whether all parties consent to magistrate judge jurisdiction. *See Williams v. King*, 875 F.3d 500, 502-05 (9th Cir. 2017) (all named parties, whether served or unserved, must consent in order to vest jurisdiction in magistrate judge); *RingCentral, Inc. v. Nextiva, Inc.*, No. 19-cv-02626-NC, 2020 WL 978667, at *1 n.1 (N.D. Cal. Feb. 28, 2020) (distinguishing *Williams* with respect to unnamed "Doe" defendants); *see also Geppert v. Doe 1*, No. 23-cv-03257-SVK, 2023 WL 5804156, at *1 (N.D. Cal. Sept. 7, 2023) ("[P]laceholder Doe defendants are not 'parties' for purposes of assessing whether there is complete consent to magistrate judge jurisdiction.").

[3] In her opposition, Ms. Khamis identifies Assistant Professor A as Faris Almoran, a fellow instructor in the department. Dkt. No. 30 at 7-9.

including those from Iraq." *Id.* ¶ 27.  She alleges that in her first month at Department C, Asst. Prof. A "harassed [her] three separate times," including telling her that he "want[ed] to kiss [her] tattoo." *Id.* ¶ 28.  Ms. Khamis states that she reported the harassing behavior to the head of Department C at the time, David Daoud, as well as to the human resources department.  *Id.* ¶¶ 30, 31.  She believes that Dr. Daoud spoke to Asst. Prof. A and instructed him to cease the behavior. *Id.* ¶ 32.  However, shortly thereafter, Dr. Daoud left the department and was replaced by Hazem Osman, whom Ms. Khamis asserts is also "conservative in his beliefs" regarding women.  *Id.* ¶¶ 33, 35-36.

        Ms. Khamis alleges that Asst. Prof. A continued to harass her, including by making a "comment about the 'nipple' of a baby bottle while laughing about Khamis and staring directly at her" or by "block[ing] her path in an unwelcome manner."  *Id.* ¶ 34.  Because of her beliefs about Dr. Osman's views, Ms. Khamis attempted to report the harassing behavior to Tatiana McCaw but Dr. McCaw directed her to Dr. Osman.  *Id.* ¶¶ 37-38.  Ms. Khamis alleges that she reported Asst. Prof. A's behavior multiple times to Dr. Osman.  *Id.* ¶¶ 38, 44.  She asserts that, despite being instructed by the human resources department to not discuss her complaints with Asst. Prof. A, Dr. Osman held private meetings with Asst. Prof. A during which he discussed her complaints about Asst. Prof. A's behavior.  *Id.* ¶¶ 41-42, 45, 50, 52-53.  She alleges that the harassing behavior continued, including that Asst. Prof. A[4] "attempted to touch her leg" and told her she was "pretty, beautiful as always."  *Id.* ¶ 43.

        Ms. Khamis reported this harassing behavior to the Chief of Staff Steve Collins, who told her he "understood" but stated "let's give the leadership some time to respond.  In the meantime, do the best you can to relax and not get too stressed out."  *Id.* ¶¶ 46-47.  Ms. Khamis states that Dr. Osman then "tried . . . to get [her] to stop reporting [the harassing] behavior," telling her that "while we may not like or want to work around certain people, our business at hand cannot necessarily make someone disappear from the workplace."  *Id.* ¶ 48.  She recounts that the harassment began to "impact[] [her] work and mental health condition on a daily basis."  *Id.* ¶ 49.

---

[4] The operative complaint attributes this behavior to an "Asst. Prof. X," but Ms. Khamis's opposition suggests that there is only one "Asst. Prof." who harassed her.  Dkt. No. 30 at 7.

Ms. Khamis alleges that on November 3, 2021, Asst. Prof. A confronted her "in the parking lot in front of 4-5 other men, calling her a 'trashy female' and also saying 'fill me up' . . . which has a sexual connotation" in Iraqi Arabic slang. *Id.* She alleges that he "g[ave] her the 'middle finger' in private." *Id.* Dr. Osman continued to meet with Asst. Prof. A privately regarding Ms. Khamis's complaints and did not "at any time follow standard operating procedures and/or personnel policies." *Id.* ¶¶ 50, 52-53.

Meanwhile, Ms. Khamis alleges that "rumors of [her] efforts to stop the harassment spread among the employees." *Id.* ¶ 54. Ms. Khamis states that she began to suffer additional harassment from other staff. *Id.* ¶ 56. One female colleague told Ms. Khamis that "'this is not our culture' to complain about male harassment." *Id.* ¶ 57. Other colleagues called her "garbage" in Arabic, or stated that "people from Anbar Province" are "garbage" and "dirty." *Id.* ¶¶ 58-59. Ms. Khamis alleges that Dr. Osman engaged in retaliatory behavior, including "insinuating that [she] is no longer fit to be a team leader, and suggesting that he does not believe her and otherwise suggesting to his staff that she is 'fair game' for criticism and harassment." *Id.* ¶¶ 60-61.

The operative complaint alleges that in early 2022, "a formal but extremely limited internal investigation is conducted." *Id.* ¶ 62. The investigation concluded that Dr. Osman had not acted appropriately in responding to Ms. Khamis's complaints and that harassment was occurring in the department. *Id.* ¶¶ 62-63. These findings were contained in a formal report produced on February 10, 2022.[5] *Id.* ¶ 63. A few days after this report, Ms. Khamis asserts that the retaliation escalated. *Id.* ¶ 64. She received "extremely negative" reviews from five students in one of her classes. *Id.* ¶ 65. She reported to her "superiors" that the students may have been acting out of retaliation as she had reported them for discipline. *Id.* ¶ 66. She alleges that she received a letter of reprimand based on the students' reviews. *Id.* ¶ 67. She was then "removed from her long-standing position and was demoted to different duties in a different location." *Id.* ¶ 68. Her employment was ultimately terminated on March 24, 2022. *Id.* ¶ 69. The operative complaint does not identify

---

[5] In her opposition, Ms. Khamis states that the investigation report was authored by "Jace Dalto Pflieger, MSgt., USAF, Operations Supervisor." Dkt. No. 30 at 6. This information is not alleged in the second amended complaint.

1    which individual or individuals took any of these actions.

2        Ms. Khamis alleges that as a result of these events, she has suffered "extreme emotional harm" for which she has sought medical treatment. *Id.* ¶¶ 71-72. She alleges that she has tried to obtain similar employment to mitigate her losses but has not been successful. *Id.* ¶ 72.

    Ms. Khamis asserts the following claims: (1) sexual harassment in violation of Title VII of the Civil Rights Act of 1964; (2) discrimination based on gender/sex in violation of Title VII; (3) discrimination based on religion in violation of Title VII; (4) discrimination based on national origin in violation of Title VII; and (5) retaliation in violation of Title VII. She seeks numerous forms of relief including compensatory damages, punitive and exemplary damages, injunctive relief, reinstatement of her position or a substantially equivalent position, back pay, and attorneys' fees and costs. *Id.* at 14, 16-17, 19-20.

## II.  LEGAL STANDARD

    A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Id.* (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). In such a motion, all material allegations in the complaint must be taken as true and construed in the light most favorable to the claimant. *Id.*

    However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Moreover, the Court is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Prager Univ. v. Google LLC* ("*Prager I*"), No. 17-CV-06064-LHK, 2018 WL 1471939, at *3 (N.D. Cal. Mar. 26, 2018) (quoting *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam)). Nor does the Court accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

1  Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the
2  pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that the "[f]actual allegations
3  must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555
4  (citations omitted). However, only plausible claims for relief will survive a motion to dismiss.
5  *Iqbal*, 556 U.S. at 679. A claim is plausible if the facts pled permit the court to draw a reasonable
6  inference that the defendant is liable for the alleged misconduct. *Id.* A plaintiff does not have to
7  provide detailed facts, but the pleading must include "more than an unadorned, the-defendant-
8  unlawfully-harmed-me accusation." *Id.* at 678.

9  Rule 12(e) provides that "a party may move for a more definite statement of a pleading . . .
10  which is so vague or ambiguous that the party cannot reasonably prepare a response. Fed. R. Civ.
11  P. 12(e). "The motion . . . must point out the defects complained of and the details desired." *Id.*

12  Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "should be
13  freely given when justice so requires," and "the court must remain guided by the underlying
14  purpose of Rule 15 . . . to facilitate decision on the merits, rather than on the pleadings or
15  technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotations and
16  citations omitted). "The decision of whether to grant leave to amend nevertheless remains within
17  the discretion of the district court," which may deny leave to amend if allowing amendment would
18  unduly prejudice the opposing party, cause undue delay, or be futile, or if the party seeking
19  amendment has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th
20  Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

21  **III.  DISCUSSION**
22      **A.  Doe Defendants**
23  The caption of the second amended complaint lists unidentified defendants "Does 1-25,"
24  but includes no specific allegations as to these defendants. *See* Dkt. No. 18 at 1. Indeed, the body
25  of the operative complaint references only Does 11-25 (but makes no mention of Does 1-10) and
26  states, without elaboration, that each defendant "is responsible in some manner for the occurrences
27  herein alleged." *Id.* ¶ 74.
28  Doe defendant pleading is "generally disfavored" in federal court. *See Merino v. Cnty. of*

6

*Santa Clara*, No. 18-cv-02899-VKD, 2019 WL 2437176, at *12 (N.D. Cal. June 11, 2019). Doe pleading may be appropriate in limited circumstances, such as where "there are specific [unknown] individuals whose conduct forms the basis of [plaintiff's] claims" and who may be identifiable through some discovery. *Id.* However, even in such situations, the time in which such defendants can remain unnamed is limited. *See Sanderlin v. City of San Jose*, No. 20-cv-04824-BLF, 2022 WL 913055, at *12 (N.D. Cal. Mar. 29, 2022) ("It would be unfair to Defendants to continue the use of Doe monikers throughout the entire discovery process because it could expose Defendants to boundless discovery."). As such, the Court dismisses the claims against all Doe defendants, with leave to amend. If Ms. Khamis chooses to replead claims against any Doe defendant, she must identify them by name or, at a minimum, by "their roles or positions or specific acts" and any other details forming the basis of her claims against them. *Merino*, 2019 WL 2437176, at *12.

### B. Claims 1-4: Discrimination

Ms. Khamis asserts several claims that rest on allegations that she faced harassment and discrimination resulting in a hostile work environment. "A plaintiff asserting a Title VII claim under a hostile work environment theory must show (1) the existence of a hostile work environment to which the plaintiff was subjected, and (2) that the employer is liable for the harassment that caused the hostile environment to exist." *Freitag v. Ayers*, 468 F.3d 528, 539 (9th Cir. 2006). "The working environment must both subjectively and objectively be perceived as abusive." *Fuller v. City of Oakland, Cal.*, 47 F.3d 1522, 1527 (9th Cir. 1995), *as amended* (Apr. 24, 1995). "When assessing the objective portion of a plaintiff's claim, we assume the perspective of the reasonable victim." *Brooks v. City of San Mateo*, 229 F.3d 917, 924 (9th Cir. 2000). Courts consider all circumstances including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1095 (9th Cir. 2008) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

#### 1. Claims 1 and 2: Discrimination Based on Sex

Ms. Khamis asserts that she was subjected to sex discrimination, including sexual

harassment, by her colleague, Asst. Prof. A, and others in violation of Title VII. Dkt. No. 18 ¶¶ 87-116. "Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, prohibits sex discrimination, including sexual harassment, in employment." *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 966 (9th Cir. 2002). To state a claim for sexual harassment, Ms. Khamis must plead facts plausibly showing that: "1) [she] was subjected to verbal or physical conduct of a sexual nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Fried v. Wynn Las Vegas*, *LLC*, 18 F.4th 643, 647 (9th Cir. 2021). Defendants move to dismiss claims 1 and 2, arguing that Ms. Khamis does not adequately plead: (1) employer liability for the alleged misconduct; (2) that the alleged misconduct was severe or pervasive; and (3) the identity of the harasser(s) and the specific instances of harassment.

### a. Employer Liability

With respect to conduct attributed to Asst. Prof. A, defendants argue that Ms. Khamis has not alleged facts sufficient to show that the DLI "knew or should have known" about the alleged misconduct and ratified it through a failure to take corrective action. Dkt. No. 25 at 10-12. As to employer liability, "[i]t is well established that an employer can create a hostile work environment by failing to take immediate and corrective action in response to a coworker's or third party's sexual harassment or racial discrimination the employer knew or should have known about." *Fried*, 18 F.4th at 647. "When the employer undertakes no remedy, where the remedy does not end the current harassment and deter future harassment, liability attaches for both the past harassment and any future harassment." *Nichols v. Azteca Rest. Enterprises, Inc.*, 256 F.3d 864, 875-76 (9th Cir. 2001).

The Court disagrees with defendants' characterization of Ms. Khamis's pleadings. Ms. Khamis describes the incidents that she alleges comprise the sexual harassment and then details attempts to report these incidents to her direct supervisor, to the human resources department, and to the Chief of Staff. The operative complaint alleges that the only actions taken by her supervisor, Dr. Osman, were to speak privately with Asst. Prof. A about her complaints and to instruct him to stop his behavior. Dkt. No. 18 ¶¶ 41, 45, 53. Ms. Khamis asserts that Dr. Osman

1  handled her complaints in a manner that was both inconsistent with DLI policies and ineffective in
2  stopping the harassment. *See Ellison v. Brady*, 924 F.2d 872, 882 (9th Cir. 1991) ("Title VII
3  requires more than a mere request to refrain from discriminatory conduct."). Indeed, Ms. Khamis
4  alleges that her supervisor discouraged her from reporting subsequent instances of alleged
5  misconduct. Dkt. No. 18 ¶ 48. These allegations are sufficient to support Ms. Khamis's claim
6  that defendants failed to promptly take corrective action at this stage of the case. *Reynaga v.
7  Roseburg Forest Prod.*, 847 F.3d 678, 690 (9th Cir. 2017) ("[P]rompt action is not enough. The
8  remedial measures must also be effective."); *cf. Brooks*, 229 F.3d at 924 (employment conditions
9  not altered when harassment consisted of a single incident and employee "was removed [] from
10 the workplace once his actions were uncovered").

### b.    Severe and Pervasive

12 Defendants separately argue that Ms. Khamis does not allege misconduct that was severe
13 or pervasive, and therefore does not plausibly allege a hostile work environment. Dkt. No. 25 at
14 13. They characterize the operative complaint as alleging merely "a handful of offensive remarks
15 that occurred over the course of an unknown period of time." *Id.* "A working environment is
16 abusive if 'hostile conduct pollutes the victim's workplace, making it more difficult for her to do
17 her job, to take pride in her work, and to desire to stay on in her position.'" *Davis*, 520 F.3d at
18 1095 (quoting *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1463 (9th Cir.1994)). "[T]he
19 required showing of severity or seriousness of the harassing conduct varies inversely with the
20 pervasiveness or frequency of the conduct." *Ellison*, 924 F.2d at 878. "'[S]imple teasing, offhand
21 comments, and isolated incidents (unless extremely serious)' do not constitute a hostile or abusive
22 work environment." *Davis*, 520 F.3d at 1095 (quoting *Faragher v. City of Boca Raton*, 524 U.S.
23 775, 788 (1998)).

24 While the operative complaint is unclear in some respects, Ms. Khamis has alleged more
25 than merely a few "offensive remarks" or "isolated incidents" between July 2021 and her
26 termination less than a year later in March 2022. *See* Dkt. No. 18 ¶¶ 28, 34, 43, 49, 58. While
27 each incident standing alone might not be severe, the operative complaint alleges a persistent
28 pattern of behavior and inaction (or ineffective action) by Ms. Khamis's direct supervisor. *Id.*

¶¶ 38-39, 41-42, 44-45, 48, 50, 52-53, 61. These allegations, if clarified as the Court directs below, are sufficient to plausibly allege severe and pervasive conduct. *See Brooks,* 229 F.3d at 924 n.4 ("A case involving a single incident of sexual harassment is obviously distinct from one involving a series of incidents, which the employer knows about and does nothing to correct."); *see also Fried*, 18 F.4th at 650 ("Several circuit courts, including our own, have recognized that employer's *response* to a third party's unwelcome sexual advances toward an employee can independently create a hostile work environment."). Ms. Khamis is not required to identify the "precise dates" on which the alleged harassment occurred. *See Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1039 (9th Cir. 2005) ("[A] plaintiff need not recite precise dates of an employer's discriminatory conduct, especially where she alleges that the conduct was pervasive.").

### c. Identity of Harasser(s) and Instances of Harassment

Defendants argue that the operative complaint does not clearly identify the individuals Ms. Khamis claimed engaged in harassing behavior, and is vague in some respects about the nature of the alleged misconduct. Ms. Khamis indicates that she is prepared to amend her complaint yet again to address these issues. Dkt. No. 30 at 7, 11, 18.

Accordingly, the Court grants as unopposed defendants' motion for a more definite statement regarding the identity of the individuals who engaged in the conduct Ms. Khamis contends constitutes harassment and additional information regarding the specific instances of harassment on which she relies.

The Court denies defendants' motion to dismiss claims 1 and 2 for failure to state a claim.

### 2. Claims 3 and 4: Discrimination Based on Religion and National Origin

Ms. Khamis also asserts claims for discrimination and harassment based on her religion and national origin in violation of Title VII. Dkt. No. 18 ¶¶ 116-51. To state a claim for discrimination based on religion and/or national origin, Ms. Khamis must plead facts plausibly showing that she "was subjected to offensive comments or other abusive conduct that [were] clearly based on her ethnicity [or religion] and were sufficiently 'severe' or 'pervasive' to alter the conditions of [her] employment." *Saberi v. BFS Retail & Com. Operations, LLC*, No. 08-cv-4232

10

JL, 2010 WL 11590000, at *17 (N.D. Cal. Aug. 10, 2010). However, "when a plaintiff asserts discrimination based on multiple protected characteristics . . . the Court must consider a combination of all bases for discrimination." *Square v. Potter*, No. 07-cv-7052 PA (JTLX), 2009 WL 10671413, at *3 (C.D. Cal. June 22, 2009), *aff'd sub nom. Square v. Donahoe*, 430 F. App'x 633 (9th Cir. 2011); *see also Lam v. Univ. of Hawai'i*, 40 F.3d 1551, 1562 (9th Cir. 1994), *as amended* (Nov. 21, 1994), *as amended* (Dec. 14, 1994) ("[W]hen a plaintiff is claiming race *and* sex bias, it is necessary to determine whether the employer discriminates on the basis of that *combination* of factors, not just whether it discriminates against people of the same race or of the same sex,"); *but see Saberi*, 2010 WL 11590000, at *22 (sex and race discrimination should not be considered together because "the conduct of which [plaintiff] complains was not based on the combination of his national origin (Persian) and sex (male)").

Defendants argue that Ms. Khamis fails to state claims for discrimination based on religion and national origin because the operative complaint contains no allegations that she was discriminated against on these grounds, observing that Ms. Khamis alleges only a "disparaging comment" that a colleague made to her about "people from Anbar Province" and that her harasser's friend "made fun of her neighborhood in Baghdad." Dkt. No. 25 at 8; *see* Dkt. No. 18 ¶¶ 59, 144 ("During her employment, Plaintiff's harasser's friend derogatorily referred to Plaintiff as being trash from a particular neighborhood in Baghdad."). Ms. Khamis responds in somewhat conclusory fashion that "she has pled her Sunni Muslim background . . . [and] that she is a modern Arabic woman who does not wear a headscarf—something that is believed to be required by religious dictum—and that her actions were criticized as not being appropriate for Arabic women." Dkt. No. 30 at 16.

The Court agrees that the operative complaint does not plead facts that plausibly support a claim of severe or pervasive conduct based solely on Mr. Khamis's religion or her national origin. However, Ms. Khamis's theory of liability seems to be that the harassment and discrimination she experienced were based on her status as a progressive woman who does not conform to traditional or conservative views of how Sunni woman from Baghdad should behave—i.e., the misconduct was grounded in her failure to conform to the beliefs of others about women of her religious

11

background and national origin. *See* Dkt. No. 18 ¶ 27 (Asst. Prof. A "considers himself to be a Muslim with conservative learnings with regard to the appropriate dress and behavior of Arabic women including those from Iraq."); ¶ 100 ("Plaintiff does not wear a headscarf or restrict her dress with regard to some conservative interpretations of Islamic religious texts."); ¶ 103("Plaintiff's harasser has more conservative views of what is appropriate for an Islamic woman's dress and behavior."); ¶ 127 ("Plaintiff's new supervisor has [a] more conservative view of what is appropriate for an Islamic woman's dress and behavior."); ¶ 128 ("Plaintiff was discriminated against because of her religious beliefs which were at odds with those of her harasser and her new supervisor."). Thus, the discrimination at issue might be regarded as based on a *combination* of sex, religion, and national origin.

Accordingly, the Court denies defendants' motion to dismiss claims 3 and 4 for failure to state a claim, on the assumption that she intends to assert claims based on the combination described above. To the extent Ms. Khamis intends claims 3 and 4 as standalone claims of harassment and discrimination based on religion and national origin, the Court grants defendants' motion to dismiss these claims. For this reason, the Court grants defendants' motion for a more definite statement and gives Ms. Khamis leave to amend to clarify her claims and the theories on which she relies, to the extent those claims implicate her religion and national origin.

### C. Claim 5: Retaliation

Ms. Khamis alleges that, in response to her efforts to report harassment, she was subjected to retaliation including "being demoted by being moved to different offices, having lower tasks assigned to her, being humiliated and having her professional reputation damaged by rumors and gossip allowed to promulgate in her department and finally being terminated." Dkt. No. 18 ¶ 155. To state a claim for retaliation under Title VII, Ms. Khamis must plausibly allege facts showing: "1) her involvement in a protected activity, 2) an adverse employment action taken against her, and 3) a causal link between the two." *Little*, 301 F.3d at 969. "Asserting one's civil rights . . . is a protected activity under Title VII . . . ." *Brooks*, 229 F.3d at 928. Adverse employment actions include: "termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review and refusal to consider for promotion. *Id.* Defendants

1  do not dispute that reporting sexual harassment is a protected activity, nor do they dispute that the
2  operative complaint alleges adverse employment actions. Defendants principally argue that Ms.
3  Khamis has failed to adequately plead a "causal link" between her protected activity and a
4  particular adverse employment action. Dkt. No. 25 at 16-17.

5  To adequately plead causation, Ms. Khamis must "allege[] facts that give rise to a plausible
6  inference that [defendants] terminated [her] *because of* [her] prior protected activity." *McCarthy*
7  *v. Brennan*, No. 15-cv-03308-JSC, 2016 WL 946099, at *13 (N.D. Cal. Mar. 14, 2016). This
8  evidence may be circumstantial, such as "the employer's knowledge that the plaintiff engaged in
9  protected activities and the proximity in time between the protected action and the allegedly
10 retaliatory employment decision." *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987). "[I]n
11 some cases, causation can be inferred from timing alone where an adverse employment action
12 follows on the heels of protected activity." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054,
13 1065 (9th Cir. 2002).

14 Here, Ms. Khamis alleges that, after 14 years of exemplary work, she was demoted and
15 fired just over a month after the conclusion of a formal investigation found her allegations of
16 harassment and discrimination were not handled correctly. Dkt. No. 18 ¶¶ 23, 62-63, 68-69.
17 Before that, she alleges multiple attempts to report harassment to different members of the
18 supervisory staff, including her direct supervisor, Dr. Osman, the human resources department,
19 and the Chief of Staff. *Id.* ¶¶ 31, 38, 44, 46-47. However, defendants correctly observe that the
20 operative pleading does not identify the individual or individuals who took the adverse
21 employment actions against Ms. Khamis, and contains no allegations indicating that those
22 individuals knew of her protected activity. Dkt. No. 25 at 16-17.

23 Defendants' arguments on this point are well taken. *See Washington v. Certainteed*
24 *Gypsum, Inc.*, No. 2:10-cv-00204-GMN, 2011 WL 3705000, at *9 (D. Nev. Aug. 24, 2011)
25 ("Plaintiff fails to allege that the two people responsible for the retaliation, Glen Abraham and
26 James Turba, knew that Plaintiff filed a complaint with the NERC."); *Foroughi v. Wal-Mart*
27 *Stores, Inc.*, No. CV-10-506-PHX-GMS, 2010 WL 2231931, at *3 (D. Ariz. June 2, 2010)
28 ("While Plaintiff does contend that "Jerry" was aware of her complaints regarding Mr. Sylvia's

13

alleged harassment, she does not allege facts suggesting that "Jerry" was the individual who decided not to renew her employment or that "Jerry" shared her complaints with the relevant decision makers."). While the timing of the events alleged in the operative complaint could support an inference that Ms. Khamis's protected activity was the reason for the adverse employment actions taken against her, the omission of critical information regarding who made the decisions behind these actions undermines any inference that could otherwise be drawn regarding causation.

Accordingly, the Court grants defendants' motion to dismiss claim 5 for failure to state a claim. However, the Court will give Ms. Khamis leave to amend to address the deficiencies identified above.

### D.     Exhaustion

Ms. Khamis alleges that she has "exhausted all administrative remedies as a prerequisite to filing this action." Dkt. No. 18 ¶ 83. She identifies the number of her administrative EEOC case but does not describe the matters raised before the EEOC. Defendants argue in their reply that because Ms. Khamis has not pled sufficient facts to plausibly support any of her claims, she has not adequately alleged that "she administratively exhausted for each instance of harassment." Dkt. No. 33 at 5.[6]

Before filing a Title VII claim in federal district court, a "claimant must exhaust administrative remedies by filing a charge with the EEOC or an equivalent state agency . . . and receiving a right-to-sue letter." *Scott v. Gino Morena Enterprises*, LLC, 888 F.3d 1101, 1106 (9th Cir. 2018) (citing 42 U.S.C. § 2000e-5(e)(1)); *see also Stephens v. United Parcel Serv., Inc.*, No. 3:23-cv-06081-JSC, 2024 WL 1974548, at *2 (N.D. Cal. May 3, 2024) ("Before bringing a Title VII claim, a plaintiff must exhaust available administrative remedies by filing a timely complaint with the EEOC or an authorized state agency.") (citing *Sommatino v. United States*, 255 F.3d 704, 707 (9th Cir. 2001)). "[T]he allegations of a plaintiff's judicial complaint must be 'like or

---

[6] Defendants did not raise failure to exhaust as a ground for dismissal in their opening brief, stating only that identification of the harassers "is essential to determine whether Plaintiff has exhausted her administrative remedies prior to filing the instant lawsuit." Dkt. No. 25 at 14.

reasonably related to the allegations' in an administrative complaint submitted to the EEO, such that they would fall within 'the scope of an EEOC investigation which [could] reasonably be expected to grow out of the [administrative] charge of discrimination.'" *Williams v. Wolf*, No. 19-cv-00652-JCS, 2019 WL 6311381, at *6 (N.D. Cal. Nov. 25, 2019) (quoting *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990)) (alterations in original). While compliance with the exhaustion requirement does not implicate the Court's subject matter jurisdiction, *see Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541, 551 (2019), "[Ms. Khamis] still must allege compliance with that requirement (or waiver by the [defendant])" in order to survive a motion to dismiss. *Williams*, 2019 WL 6311381, at *6.

As the Court permits Ms. Khamis to amend her complaint, as explained above, Ms. Khamis may also amend her complaint to show compliance with the exhaustion requirement, including whether she has a right-to-sue letter from the EEOC.

### E. Punitive and Exemplary Damages

In her second amended complaint, Ms. Khamis seeks "exemplary and punitive damages in an amount appropriate to punish Defendants and each of them and sufficient to deter them from engaging in similar misconduct." Dkt. No. 18 at 20. Defendants argue that such damages are unavailable when asserted against government entities, pursuant to Section 102 of the Civil Rights Act of 1991. Dkt. No. 25 at 17. Ms. Khamis does not oppose dismissal of her request for such damages and represents that she "will eliminate her prayer for relief for punitive damages as against the Army" upon amendment. Dkt. No. 30 at 18.

In view of Ms. Khamis's non-opposition, the Court grants defendants' motion to dismiss her request for punitive and exemplary damages with prejudice.

### IV. CONCLUSION

For the reasons explained above, the Court grants in part and denies in part defendants' motion to dismiss and for a more definite statement as follows:

1. Claims 1 and 2:  denies the motion to dismiss for failure to state a claim; grants the motion for a more definite statement.

2. Claims 3 and 4:  denies the motion to dismiss for failure to state a claim as to a

      combination of harassment and discrimination based on sex, religion, and national origin, but grants the motion to the extent these claims purport to state standalone claims based on religion and national origin; grants the motion for more definite statement.

    3. Claim 5: grants the motion to dismiss.

    4. Request for punitive and exemplary damages: grants the motion to dismiss with prejudice.

Because it appears that Ms. Khamis may be able to amend her pleading to address the deficiencies the Court has identified with respect to claims 1-5, the Court gives Ms. Khamis leave to amend those claims. To the extent Ms. Khamis wishes to file a document or a portion of a document under seal in connection with her amended pleading, she must comply with the requirements of Civil Local Rule 79-5.

Ms. Khamis must file her third amended complaint by **February 18, 2025**. Defendants' response to the third amended complaint is due no later than **March 11, 2025**.

The Court will hold an initial case management conference on **April 29, 2025.** The joint case management statement is due **April 22, 2025.**

**IT IS SO ORDERED.**

Dated: January 27, 2025

Virginia K. DeMarchi
United States Magistrate Judge